**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Basem M. Hatamleh, <br><br> Plaintiff, <br><br> v. <br><br> Rush University Medical Center, <br><br> Defendant. | Case No. 18-cv-8238 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Defendant Rush University Medical Center terminated Plaintiff Basem Hatamleh after Plaintiff failed a required annual examination for respiratory therapists working for Defendant. Plaintiff claims that Defendant subjected him to disparate treatment and terminated and retaliated against him because of his age, in violation of the Age Discrimination in Employment Act (ADEA). Defendant moves for summary judgment. [111]. For the reasons explained below, this Court grants Defendant's motion.

**I.  Background**

The following facts come from Defendant's statement of facts [113], Plaintiff's statement of additional facts [117], and their respective responses [116]; [120].

**A.  The Parties and Defendant's Policies**

Plaintiff, who was born in 1958, has worked as a respiratory therapist for multiple health care organizations for over twenty years. [113] ¶ 1. Defendant

1

employs respiratory therapists (RTs) to provide services to its patients. *Id.* ¶ 2. In Defendant's system, RT1s and RT2s share the same clinical responsibilities; RT2s may, however, take the lead where needed. *Id.* ¶ 3. RT3s are clinic specialists with master's degrees who oversee RT1s and RT2s. *Id.*

Rush requires all new respiratory therapists to complete a ninety-day probationary period and orientation, during which Defendant trains and tests them to ensure they possess the skills needed for the job. *Id.* ¶ 5. If a new employee shows promise but gaps remain in his or her expected abilities, Defendant may extend the probationary period to give him or her additional opportunities to develop and demonstrate skills. *Id.*

In addition, Defendant requires that, even after successfully completing their probationary periods, all respiratory therapists at the RT1 or RT2 levels must successfully pass an annual simulation that tests their competency and critical thinking skills as part of their annual performance reviews. *Id.* ¶ 6. This competency evaluation, which occurs each year in June, gives an employee a hypothetical clinic scenario, and the employee must verbally explain to evaluators what they would do and why at various treatment points when facing a given set of circumstances. *Id.* ¶ 9. Defendant gives the same simulation to everyone. *Id.* ¶ 11.

Two evaluators are present at each simulation. *Id.* ¶ 15. Each evaluator holds a pre-planned script for the scenario, scoring sheets, and decision trees with the potential decisions the employee might make and the pre-planned responses to each. *Id.* ¶ 16. Every evaluator uses the same materials each year. *Id.* The evaluators give

the employee a copy of the script from which they administer the test (without answers). *Id.* ¶ 17. Using a white board, the evaluators record all of the key information along with the employee's treatment decisions and the patient's responses to the treatment. *Id.* ¶ 18. If an employee reaches the wrong conclusion, the evaluators may ask them to explain their reasoning, which sometimes prompts them to realize their mistake. *Id.* ¶ 19. At the end of the simulation, evaluators compare their scores and resolve any differences in scoring in favor of the employee. *Id.* ¶ 21. The evaluators total the points earned on each part of the simulation, and a scoring matrix indicates where the point total for a particular part of the simulation falls on a five-point scale that matches Defendant's performance rating scale. *Id.* ¶ 22.

After the simulation, the employee and one of the evaluators sign off on the scoring sheet for each part. *Id.* ¶ 24. The scoring sheet then becomes part of the employee's file which Defendant uses to complete their performance evaluation. *Id.* Employees must have a score of at least three "meets expectations" on a five-point scale on each part of the evaluation to avoid corrective action; a "meets expectations" score correlates to a number rating of "3." *Id.* ¶¶ 25, 26. Corrective action includes remediation, restriction from the intensive care unit (ICU), demotion, and termination. *Id.* ¶ 26. Corrective action usually begins with remediation, which requires retaking any part of the simulation on which the employee did not score at least a "3." *Id.* ¶ 27. If the employee achieves a "3" or better on a retake, no further corrective action may be required; but if they fail again, their practice may be

3

restricted or employment may be terminated. *Id.* ¶ 28. Each retake involves the same scenarios and same scoring as the initial evaluation. *Id.* ¶ 29.

The Director of Clinical Education and the Clinical Education Coordinator typically score initial evaluations, but if one has a conflict, an RT3 may fill in for either. *Id.* ¶ 30. In 2016, Brady Scott served as the Director of Clinical Education, and Jie Li served as the Clinical Education Coordinator. *Id.* ¶ 31.

To help employees who required retaking their simulations, Li put together a remediation study plan for each employee based on the parts that employee failed. *Id.* ¶ 32. The plan included readings, training sessions, practice evaluations, or attending classes. *Id.* If employees fail any part of their retake, they must retake it again, as passing the full annual competency evaluation is one of Defendant's conditions of employment. *Id.* ¶ 33.

### B. Plaintiff's First Competency Test

Defendant hired Plaintiff on January 18, 2016. [117] ¶ 3. Defendant's Keith Roberts, Director of Respiratory Care Services, agreed to hire Plaintiff as an RT1 respiratory therapist after reviewing his credentials and conferring with those who had interviewed him, including Valerie Klans, the Clinic Manager of the Adult Care Respiratory Care Services Department. [113] ¶ 34. Klans recommended Plaintiff to Roberts. *Id.* Plaintiff was not the oldest respiratory therapist under Roberts; in fact, the department included other respiratory therapists born in 1954, 1956, and 1958, and two of those therapists remain employed by Defendant. *Id.* ¶ 35.

4

Plaintiff was 58 when he began working for Defendant. *Id.* ¶ 36. He reported to Klans, who in turn reported to Roberts. *Id.* During his initial probationary period, Plaintiff worked in the ICU. *Id.* ¶ 37. Klans extended Plaintiff's probationary period to May 13, 2016. *Id.* According to Defendant, the extension was due to unsatisfactory performance. *Id.*

Six months after his hire date, on June 20, 2016, Defendant administered Plaintiff his first competency test. [117] ¶ 4; [113] ¶ 38. Plaintiff signed off on the scoring sheets showing that he failed five of the six parts. [113] ¶ 38. Klans then gave Plaintiff a remediation plan that Li had created and told Plaintiff he must pass the failed parts by September 1, 2016; Plaintiff also discussed the plan with Li. *Id.* ¶ 39; [116] ¶ 39.

On August 25, 2016, Plaintiff met with several senior members of the respiratory therapy department, including Roberts. [117] ¶ 9. During that meeting, Plaintiff complained that he should not have to retake the test because he had only recently completed his probationary period and orientation; that his failing scores in the evaluation could not be valid because he successfully treated patients in the ICU; that Defendant's processes were different than other places he worked; that he felt Defendant treated him like students or recent graduates because the evaluators were University professors; that a coworker had told him that one of the evaluators, Brady Scott, had said during the evaluation that he would "go easy" on him because he was new, which showed favoritism; that the remediation plan Li created felt like punishment; that he felt he was expected to study for his competency exam; and that,

5

instead of remediating employees, Defendant should hold workshops to prepare employees for retakes. [113] ¶ 41.

In response, Roberts, Li, and Klans told Plaintiff that all staff, regardless of the length of their employment, were treated equally and given the same scenarios, and that two evaluators independently scored the evaluations. *Id.* ¶ 43. They also informed Plaintiff his initial scores would not be changed and would be used to prepare his annual evaluation. *Id.* On September 12, Roberts recapped the August 26 meeting in an email to Plaintiff, explaining, among other things, that Plaintiff could achieve a "3" on all parts of the competency evaluation if he followed the remediation plan. *Id.* ¶ 45.

Plaintiff identified the coworker allegedly given leniency as Richard Kopca. *Id.* ¶ 47. Because Kopca was still in his probationary period at the time of the annual competency test in June, he was not required to take the test. *Id.* Klans offered Kopca the opportunity to take the annual evaluation, assuring him his scores would not affect him since he was still in his probationary period. *Id.* Kopca chose to take the competency simulation to see how he would do, and he passed all parts on the first try. *Id.*

    **C.**    **Plaintiff's Retake**

On September 27, 2016, Plaintiff repeated the five parts of his annual competency evaluation that he previously failed. *Id.* ¶ 50. Brady Scott and RT3 Ankeet Patel scored Plaintiff's September retake. *Id.* ¶ 51. Although Plaintiff passed three of the five parts he had retaken, he failed two other parts—the arterial gas/x-

ray interpretation competency and the mechanical ventilation protocol competency. *Id.* Plaintiff's responses on the arterial blood gas/x-ray interpretation competency part were sufficiently close to correct that the evaluators allowed him to immediately retake that part, and he passed. *Id.* ¶ 52.

During the high-frequency oscillating ventilator (HFOV) part of the simulation retake, the evaluators asked him to attach tubing and set up the machine—steps he did not have to complete during the initial exam in June. *Id.* ¶ 53. According to Defendant, the first person to take the test on a given day must complete machine set up, but it is not part of the evaluation and does not affect scoring. *Id.* Plaintiff, for his part, counters that the scoring sheets from the exams do not indicate whether the machine set up factored into his overall score. [116] ¶ 53. Plaintiff signed off on his September 27 scores on the same day he took the exam, including the mechanical ventilator competency score of "1." [113] ¶ 54.

Klans remained out of the office on medical leave from October through December 2016. *Id.* ¶ 55. When she returned, she realized three employees who failed their retakes had not scheduled or completed another retake: Plaintiff, Mariah Geverola (born 1983), and Ryan Farquharson (born 1989). *Id.* Klans thereafter told all three that they must pass the competency evaluation with a score of "3" or better by March 31, 2017. *Id.* ¶ 56. She also prohibited all three from working in the ICU until they passed their exams. *Id.*

7

### D. Plaintiff's Complaint About Discrimination and Second Retake

When respiratory therapists assigned to the ICU were overwhelmed with high patient influx in February 2017, Klans asked the three restricted therapists to temporarily help in the ICU. *Id.* ¶ 57. Plaintiff refused. *Id.*

On February 7, 2017, Plaintiff sent an email to Roberts, stating he had walked into a "nightmare" upon his return from vacation and requesting that the "harassment and discrimination" be stopped. *Id.* ¶ 58. Roberts met with Plaintiff on February 8, 2017 to find out more information about Plaintiff's complaint. *Id.* ¶ 60. During the meeting, Roberts asked Plaintiff what he meant when he stated he experienced "harassment and discrimination," and Plaintiff replied that Klans had initially restricted him from working in the ICU but asked him to help out when the ICU was short-staffed. *Id.* ¶ 61. Plaintiff also said his restriction from the ICU was discriminatory because Defendant allowed new hires who had not completed competency testing to work there. *Id.* Plaintiff did not believe it was fair to restrict him from the ICU until he passed his evaluation, when employees hired after spring did not have to take the evaluation until the following June yet were allowed to work in the ICU. *Id.* In response, Roberts reminded Plaintiff that all post-probationary RT1s and RT2s must pass the annual competency test with a "3" or better to work in the ICU. *Id.* ¶ 62. Roberts additionally reiterated that Plaintiff had failed the test twice, that he had missed multiple deadlines to schedule and repeat the test, and that as a result, he and the two other employees were in the same situation with ICU restrictions. *Id.* Roberts advised Plaintiff that he should report further concerns to

8

the Human Resources department. *Id.* ¶ 63. Plaintiff never reported any concerns to Human Resources. *Id.* ¶ 64.

On March 31, 2017, Plaintiff retook and failed the mechanical ventilation part of the annual competency test. *Id.* ¶¶ 65–66. Li and RT3 Edita Meksraityte scored this test. *Id.* ¶ 65.

### E. Plaintiff's Termination

On April 7, 2017, Roberts terminated Plaintiff's employment. *Id.* ¶ 68. Plaintiff appealed his discharged through Defendant's employee appeals process, whereby employees unrepresented by a labor union may appeal disciplinary action. *Id.* ¶ 69. Ultimately, Plaintiff's appeal was denied and his termination was upheld. *Id.* ¶ 72.

### F. Plaintiff's Complaint

Plaintiff brings a two-count complaint against Defendant under the ADEA for age discrimination (Count I) and retaliation (Count II). [1]. Defendant has moved for summary judgment on both claims. [111].

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; instead "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. Analysis

Defendant argues that Plaintiff lacks sufficient facts to prove both age discrimination and retaliation under the ADEA. This Court will address each argument in order below.

#### A. Count I: Age Discrimination

The ADEA makes it illegal for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The statute extends protection to workers forty years of age and older. *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th

10

Cir. 2021). The ADEA prohibits "disparate treatment, where 'liability depends on whether the protected trait . . . actually motivated the employer's'" adverse decision. *Id.* (quoting *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017)). To recover, "it's not enough to show that age was *a* motivating factor"; rather, Plaintiff must prove that, "but for his age, the adverse action would not have occurred." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019) (quoting *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018)).

At summary judgment, the "critical question" is whether Plaintiff produced enough evidence to permit a reasonable jury to conclude that his age "caused the adverse employment action." *Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 746 (7th Cir. 2021). Plaintiff can meet his burden either by introducing direct or circumstantial evidence that Defendant terminated him because of his age, or alternatively, by utilizing the familiar *McDonnell Douglas* burden-shifting framework. *McDaniel*, 940 F.3d at 367–68; *Marnocha*, 986 F.3d at 719. The *McDonnell Douglas* framework requires Plaintiff to show that: (1) he is a member of a protected class; (2) he was meeting Defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of his protected class were treated more favorably. *Marnocha*, 986 F.3d at 719. If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, after which the burden shifts back to Plaintiff to submit evidence that Defendant offered a pretextual explanation. *Id.*; *Chatman*, 5 F.4th at 746.

11

Here, Plaintiff offers no direct evidence that Defendant treated him differently because of his age. In attempting to introduce circumstantial evidence, Plaintiff argues that newer, younger respiratory therapists "are permitted to work throughout the hospital including the ICU, while [Defendant] waits a year for them to get acclimated." [115] at 8–9. This argument is unsupported by the factual record. Defendant requires *all* new respiratory therapists, regardless of age, to complete a probationary period and orientation during which Defendant trains and tests them continuously to ensure they possess the skills they require for the job. [113] ¶ 5. And *all* respiratory therapists, regardless of age, that have completed the probationary period must then successfully pass Defendant's annual competency test as part of their annual performance reviews. *Id.* ¶ 6. Thus, while there exists evidence that Defendant treats probationary and post-probationary employees differently, there exists no evidence of a nexus between *age* and such differential treatment.

Plaintiff also attempts, under *McDonnell Douglas*, to identify a younger comparator, Richard Kopca, who Plaintiff claims received more favorable treatment. [115] at 9. Specifically, Plaintiff asserts that evaluator Brady Scott advised Kopca that he would "go easy on him" during his competency exam since he was a newly minted respiratory therapist. [115] at 9; [117] ¶¶ 7, 8. Plaintiff's reliance on Kopca as a comparator suffers from several flaws. First, the only evidence that Scott made this comment comes from Plaintiff, who testified that he heard about this comment from Kopca, who himself heard it from Scott. [114-1] at 10. This evidence is inadmissible because it is hearsay within hearsay. *See Flanagan v. Off. of Chief Judge of Cir. Ct.*

12

*of Cook Cnty., Ill.*, 893 F.3d 372, 375 (7th Cir. 2018) ("But Flanagan's testimony about what her colleague Anderson told her, and Anderson's written account of events, were properly ignored because they suffer from a *double* hearsay problem: they are statements of what Anderson said Vaughan and Loizon had said."). Second, even if the evidence of Scott's comments were admissible, it does not raise an inference of age-based discrimination. Indeed, Plaintiff fails to provide any evidence that Scott told Kopca he would "go easy on him" *because of* Kopca's younger age. *See, e.g.*, *Krnich v. FPC Corp.*, No. 19-CV-5358, 2021 WL 3930306, at *15 (N.D. Ill. Sept. 2, 2021) (finding insufficient evidence of age discrimination where the plaintiff offered evidence of comments that did "not support much of an inference of animus against older employees").

More critically, there is insufficient evidence that Kopca qualifies as an adequate comparator in the ADEA context. Initially, there is no evidence in the record of Kopca's age. While Plaintiff asserts that Kopca is in his "twenties," [117] ¶ 20, the exhibit Plaintiff cites in support of that assertion is an excerpt of his deposition in which he says nothing about Kopca's age, *see* [114-1]. This alone dooms Plaintiff's attempt to use Kopca as a comparator. *See Marnocha*, 986 F.3d at 719; *see also Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012) (noting that the "similarly-situated" inquiry "at least requires that the plaintiff name a comparator outside [his] protected class"). Moreover, while similarly situated parties need not be "identical in every conceivable way," they "must be directly comparable to the plaintiff in all material respects." *Marnocha*, 986 F.3d at 719 (quoting *Coleman*

13

*v. Donahue*, 667 F.3d 835, 846 (7th Cir. 2012)). Kopca is not comparable to Plaintiff in all material respects. At the time of the competency test in June 2016, Kopca was still in his probationary period while Plaintiff was not. [113] ¶¶ 37, 47. As a matter of law, probationary employees are not similarly situated to permanent employees for purposes of establishing a discrimination claim. *See Steinhauer v. DeGolier*, 359 F.3d 481, 484–85 (7th Cir. 2004) ("Purifoy and Steinhauer were not similarly situated because Steinhauer was still on probation while Purifoy was not."). Additionally, Defendant did not require Kopca to take the test, as it did Plaintiff; and Kopca's scores did not affect his performance reviews, while Plaintiff's scores affected his review. *Id.* ¶¶ 6, 47. Because Plaintiff and Kopca were not "subject to the same standards," Kopca cannot serve as a comparator for purposes of determining whether Defendant treated Plaintiff unfavorably due to his age. *McDaniel*, 940 F.3d at 369 (internal quotation marks and citation omitted).

Next, Plaintiff attempts to avoid summary judgment by arguing that Defendant subjected him to more stringent testing than it did others during his September retake examination. [115] at 9–10. This argument is also baseless. Plaintiff complains that Defendant subjected him to an "inordinate number of hypothetical x-rays and arterial blood gas examples" during his second exam, [115] at 10, but it is undisputed that evaluators *allowed* Plaintiff to take that portion of the exam *twice* during that September sitting (because he failed the first time), thus necessitating additional hypotheticals and examples, [113] ¶ 52. Plaintiff passed this portion of the exam on his second try. Plaintiff also asserts that Defendant made him,

14

but not others, set up the HFOV machine during his September retake. [115] at 10. Plaintiff does not explain how this single instance was connected to his age. And it does not suggest a discriminatory animus because Defendant required the first person testing on a given day to set up the machine, regardless of age. [113] ¶ 53.

Plaintiff also argues that there is a factual dispute about who hired him—Roberts or Klans. [115] at 11–12. Plaintiff does not fully elaborate on this argument, but this Court assumes that Plaintiff intends to invoke the "same actor" inference. That inference permits but does not require an inference that attitudes of the person who hired plaintiff would not have changed by the time the same person fired the plaintiff. *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 935 (7th Cir. 2020) (citing *Blasdel v. Nw. Univ.*, 687 F.3d 813, 820 (7th Cir. 2012)). Thus, the fact that Roberts both hired and fired Plaintiff might raise an inference of nondiscriminatory intent in firing Plaintiff. In contrast, the same actor inference would not arise if it is true, as Plaintiff claims, that Klans hired him and Roberts fired him. *See* [115] at 11. This Court is dubious that an actual fact dispute exists, as Plaintiff conceded in response to Defendant's statement of facts that Roberts hired him on Klans' recommendation. [116] ¶ 34. But to the extent a fact dispute exists as to who hired Plaintiff, it is immaterial to this case. If Defendant is correct that Roberts both hired and fired Plaintiff, that fact is but "one more thing stacked against" Plaintiff. *Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012) (quoting *Martino v. MCI Commc'ns Servs., Inc.,* 574 F.3d 447, 455 (7th Cir. 2009)). If, on the other hand, Plaintiff is correct that different people hired and fired him, that fact simply

precludes Defendant from availing itself of that favorable inference. It does not mean that Plaintiff has raised a triable issue of fact on discriminatory animus.

After considering Plaintiff's arguments and the record before it, this Court finds that Plaintiff has failed to present any evidence that Defendant subjected him to differential treatment because of his age. Summary judgment is therefore warranted on his discrimination claim.

### B.     Count II: Retaliation

Plaintiff's retaliation claim suffers equally from evidentiary deficiencies. To overcome summary judgment on this claim, Plaintiff must present sufficient evidence from which a reasonable jury could conclude that his "engagement in protected activity caused a materially adverse employment action." *Fields v. Bd. of Educ. of City of Chi.*, 928 F.3d 622, 626 (7th Cir. 2019). Like his discrimination claim, Plaintiff must demonstrate that the retaliation was the "but-for" cause of the adverse action, "not merely a contributing factor." *McDaniel*, 940 F.3d at 371.

Plaintiff lacks any evidence to support his retaliation claim. First, the record does not establish that Plaintiff engaged in protected activity. While the record shows that Plaintiff complained generally about harassment and discrimination to Roberts in February 2017, it does not also indicate that Plaintiff complained about "discrimination based on [his] age." *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012) (noting that general complaints about discrimination or

16

harassment, without tethering them to a protected class, is insufficient). Plaintiff offers his deposition testimony where the following exchange occurred:

> Q. Okay. So this formal complaint that you initiated, who did you formally complain to?
>
> A. It's by talking to Keith [Roberts].
>
> Q. Okay. And you form – did you tell – did you use the word 'discrimination' when you spoke with Keith?
>
> A. Yes.
>
> Q. You said age discrimination.
>
> A. I – I – I can't remember every word –
>
> Q. Okay.
>
> A. – but yes, I talked to him.

[114-1] at 25. This vague testimony does not affirmatively indicate that Plaintiff about *age* discrimination to Roberts, only discrimination in general. This remains insufficient to establish engagement in protected activity. *See Smith*, 674 F.3d at 658; *cf. Cesario v. Jewel Food Stores, Inc.*, No. 17 CV 319, 2020 WL 996498, at *23 (N.D. Ill. Mar. 2, 2020) ("Cieslak's internal and external complaints about age discrimination constitute protected activity" under the ADEA), *appeal dismissed*, No. 20-1705, 2021 WL 5173374 (7th Cir. Aug. 31, 2021).

Even if Plaintiff could demonstrate that he engaged in protected activity Plaintiff lacks evidence that Defendant terminated him in retaliation for his protected activity. Plaintiff presents no evidence that his termination was motivated by retaliation, and there exists none. On the contrary, the record shows that Roberts

17

made the decision to terminate Plaintiff because Plaintiff failed the annual competency examination multiple times and thus could not fulfill a condition of employment that Defendant imposed on all post-probationary employees. This Court therefore grants summary judgment to Defendant on Plaintiff's retaliation claim.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion for summary judgment [111] and directs the Clerk to enter judgment for Defendant and against Plaintiff. Civil case terminated.

E N T E R:

Dated: June 6, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge